IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>JOSHUA DAVID HEAFNER,<br><br>　　　　　Defendant. | CR 23-109-BLG-SPW<br><br><br><br><br><br>ORDER |

Before the Court is a Motion to Suppress filed by Defendant Joshua David Heafner. (Doc. 40). Heafner seeks to suppress all evidence related to the search of his person following his arrest on March 15, 2023, the probationary search of his vehicle conducted on the same day, and any evidence obtained pursuant to a search warrant based on the probation search. (Doc. 42). Heafner argues that the evidence seized must be suppressed because the search violated the Fourth Amendment, and any evidence subsequently found is subject to the exclusionary rule. (*Id.* at 7). The Government opposes the motion. (Doc. 47). On January 10, 2025, the Court held a hearing on the matter, during which Billings Police Department Officers Trey Malcom and Scott Howlett testified. (Doc. 51).

Considering the parties' briefing and the testimony and evidence presented at the hearing, the Court grants Heafner's motion.

1

## I.     Factual Background

On September 30, 2013, Heafner was convicted of Assault on a Peace Officer in Montana's Thirteenth Judicial District. (Doc. 47 at 2). He was sentenced to serve ten years in prison with two years suspended. (Doc. 47-1). On February 15, 2023, while on probation, Heafner became a suspect in a Partner and Family Member Assault. (Doc. 48-3). On March 2, 2023, Municipal Court Judge Sheila R. Kolar issued a warrant to arrest Heafner for misdemeanor Stalking. (Doc. 48-4).

On March 14, 2023, Billings Police Department Officers Hunger and Weber responded to a car accident in downtown Billings near the intersection of North 31st Street and 6th Avenue North. (Doc. 42 at 3; Doc. 47 at 4). When the officers arrived, they observed a silver Volkswagen Passat abandoned in the intersection. (Doc. 48-5). The driver's door was open, and Officer Hunger plainly viewed a pistol and ammunition in the car. (*Id.*). Officer Hunger then interviewed witnesses at the scene and learned that the driver of the abandoned vehicle had fled on foot after the collision. (*Id.*). The witnesses described the driver as a bald, white male wearing baggy clothing. (*Id.*). Officer Hunger searched the vehicle for identifying information and discovered a methadone prescription bottle with Heafner's name. (*Id.*).

On March 15, 2023, Billings Police Officer Malcom was informed that Heafner was the primary suspect for the hit-and-run incident from the day before.

2

(Doc. 48-7). Officer Malcom knew that Heafner drove a gray Chevrolet Avalanche and that he resided at 645 Howard Avenue. (*Id.*). Officer Malcom drove to Heafner's residence. (Doc. 42-1 at 7). As he approached the residence, Officer Malcom observed a male matching Heafner's description reaching into the driver's compartment of a grey Chevrolet Avalanche. (*Id.*). Officer Malcom then activated his emergency lights. (*Id.*). Officer Malcom exited the vehicle as Heafner fled on foot. (*Id.*). Officer Malcom pursued Heafner and eventually detained him after deploying his taser. (*Id.*).

Officer Malcom then escorted Heafner to his patrol vehicle and requested a medical response based on Heafner's complaints of chest pain. (*Id.*). Heafner was turned over to medical staff and transported to the St. Vincent Hospital. (*Id.*). Officer Malcom then contacted the on-call probation officer, Officer Howlett. (*Id.*). At the suppression hearing, Officer Howlett testified that he was aware that Heafner had outstanding warrants and had possibly been involved in a hit-and-run accident the day before. Officer Howlett requested that Officer Malcom perform a probationary search of the Chevrolet Avalanche. (*Id.*)

Officer Malcom performed a probationary search of the vehicle and discovered a firearm inside a bag on the passenger seat. (*Id*). Officer Malcom then stopped his search and applied for a search warrant. (*Id.*). After the warrant was granted, Officer Malcom seized the firearm and three cell phones within the vehicle.

3

(*Id.* at 7–8). On September 21, 2023, Heafner was charged with being a prohibited person in possession of a firearm and ammunition under § 922(g)(1). (Doc. 1).

Heafner now moves to suppress all evidence related to the March 15, 2023, search of himself, the search of the Chevrolet Avalanche, the search of the bags and containers in the vehicle, and all evidence obtained pursuant to the search warrant issued on March 15th. (Doc. 42 at 1).

## II.    Legal Standard

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV. The touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined "by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *Wyoming v. Houghton,* 526 U.S. 295, 300 (1999). Probationers have a diminished privacy interest under the Fourth Amendment and an officer only requires reasonable suspicion to conduct a probationary search. *United States v. Knights*, 534 U.S. 112, 120 (2001).

If law enforcement violates a defendant's Fourth Amendment right to be free from unreasonable searches and seizures, then, under the exclusionary rule, "all evidence seized as a result of the unconstitutional actions of law enforcement must

be suppressed as the fruit of the poisonous tree." *United States v. Morales*, 252 F.3d 1070, 1073 (9th Cir. 2001) (citing *Wong Sun v. United States*, 371 U.S. 471, 484–85 (1963)).

## III. Discussion

In his Motion to Suppress, Heafner makes two arguments: (1) that the probationary search of the car was unsupported by reasonable suspicion, and (2) that the search of his car cannot be justified as a search incident to arrest. (Doc. 42). In response, the Government argues that: (1) reasonable suspicion existed to stop Heafner as he stood near his vehicle and (2) reasonable suspicion existed to conduct a probation search of the vehicle after officers detained Heafner. (Doc. 47). The Government did not respond to Heafner's search incident to arrest argument. The issue here is not whether Officer Malcom had sufficient reasonable suspicion to detain Heafner but whether the search of Heafner's vehicle following his lawful arrest was supported by reasonable suspicion. This Court will address whether the probationary search was supported by reasonable suspicion, and then whether the search could be justified as a search incident to arrest.

### A. *Probationary Search*

Heafner argues that his probationary status did not permit a vehicle search without sufficient cause. (Doc. 42 at 5). Further, that his actions on March 15, 2023 — reaching into the vehicle and fleeing on foot — did not provide the necessary

reasonable suspicion to effectuate a probationary search. (*Id.* at 5–6). In response, the Government argues that officers could reasonably conclude that Heafner was attempting to retrieve contraband inside his vehicle and that he fled from Officer Malcom to distance himself from the contraband. (Doc. 47 at 15).

Under limited circumstances, officers may conduct a probationary search without obtaining a warrant and without probable cause. *United States v. Davis*, 932 F.2d 752, 758 (9th Cir. 1991). A defendant's status as a probationer informs both sides of that balance. *Knights*, 534 U.S. at 119. Inherent in the very nature of probation is that probationers "do not enjoy 'the absolute liberty to which every citizen is entitled.'" *Id.* (citing *Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972))). Just as other punishments for criminal convictions curtail an offender's freedoms, a court granting probation may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law abiding citizens. *Id.* Those interests warrant a lesser than probable-cause standard. When an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable. *Id.*

On March 15, 2023, Heafner was on probation and subject to conditions of probation and parole. (Doc. 48-1). As part of his conditions, Heafner consented to

searches of his person and property upon reasonable suspicion that he was violating parole conditions. (*Id.*). Officers required reasonable suspicion that Heafner was engaging in conduct prohibited by his probationary conditions to conduct a probationary search.

"Reasonable suspicion is defined as 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *United States v. Cotterman*, 709 F.3d 952, 968 (9th Cir. 2013) (quoting *United States v. Cortez*, 499 U.S. 411, 417–18 (1981)). Reasonable suspicion requires specific, articulable facts which, together with objective and reasonable inferences, form a basis for suspecting that a particular person is engaged in criminal conduct. *United States v. Thomas*, 211 F.3d 1186, 1189 (9th Cir. 2000). The reasonable suspicion standard is "not a particularly high threshold to reach" but "a mere hunch is insufficient." *United States v. Valdes-Vega*, 738 F.3d 1074, 1078 (9th Cir. 2013). "The quantum of proof needed for reasonable suspicion is less than a preponderance of evidence and less than probable cause." *United States v. Tiong*, 224 F.3d 1136, 1140 (9th Cir. 2000). In determining whether reasonable suspicion exists, the underlying facts are considered in their totality and in light of the officer's experience. *United States v. Arvizu*, 534 U.S. 266, 273 (2002).

Headlong, unprovoked flight — wherever it occurs — is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly

suggestive of such. *Illinois v. Wardlow*, 528 U.S. 119 (2000). The Supreme Court has never endorsed a per se rule that flight establishes reasonable suspicion. Instead, the Court has treated flight as just one factor in the reasonable suspicious analysis, if an admittedly significant one. *United States v. Brown*, 925 F.3d 1150, 1155 (9th Cir. 2019). The reasonable suspicion analysis is "not 'readily, or even usefully, reduced to a neat set of legal rules'" and considers the totality of the circumstances. *United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000).

Here, three facts weigh into this Court's reasonable suspicion analysis: 1) Heafner was reaching into his vehicle when Officer Malcom arrived; 2) Heafner fled from Officer Malcom when he activated his emergency lights; and 3) Heafner had an active arrest warrant from March 2, 2023, and was suspected of being involved in a hit-and-run accident the day before.

Heafner reaching into his vehicle carries little weight in the reasonable suspicion analysis. Reaching into one's vehicle is a common, everyday action. On its own, the act does not make it more likely that Heafner was engaged in criminal activity. The key inquiry then is whether this action, in combination with Heafner's flight, created sufficient reasonable suspicion that Heafner was violating his probationary conditions.

The circumstances surrounding Heafner's flight are more indicative of him attempting to evade arrest for his completed crimes, rather than fleeing to avoid the

8

discovery of an ongoing crime. Heafner had an active arrest warrant as of March 2, 2023, for stalking and was likely aware that he was a suspect in a hit-and-run accident from the day prior. Based on these facts known to Officer Malcom and Hewlett, it is more reasonable to believe Heafner was fleeing from the police based on his active warrants, rather than to distance himself from contraband in his vehicle.

The Court cannot agree with the Government that it was reasonable for Officer Malcom and Howlett to conclude that Heafner's flight was an attempt to distance himself from contraband in his vehicle. The officers merely had a "hunch" that Heafner was looking for illegal contraband in his car. A hunch without an objective basis for suspecting a defendant of criminal activity cannot support a finding of reasonable suspicion.

This case certainly presents a close call as courts often find that "unprovoked headlong flight" creates a reasonable suspicion that a defendant is engaged in criminal activity. *See Wardlow*, 528 U.S. 119 (finding that unprovoked flight from officers in a high-crime area supported reasonable suspicion); *Smith*, 633 F.3d 889 (finding that unprovoked flight after the officer identified himself in high-crime area created reasonable suspicion). But as the Ninth Circuit explained in *Smith*, "there may be circumstances where a person's flight has a perfectly innocent and reasonable explanation." *Smith*, 633 F.3d at 893. And the reasonable suspicion determination must be based on commonsense judgments and inferences about

9

human behavior. *Wardlow*, 528 U.S. at 119–120 (citing *United States v. Cortez*, 449 U.S. 411, 418 (1981)). Here, while there may not be a completely "innocent" explanation for Heafner's behavior since he was evading arrest for his completed crimes, the common-sense explanation is that Heafner's flight related to his active warrants rather than his fear of officers discovering a new ongoing crime.

In sum, there was insufficient evidence to reasonably believe that Heafner was engaging in criminal activity separate from his already suspected crimes. The Court finds that the officers did not have the reasonable suspicion to conduct a probationary search of the vehicle.

B.   *Search Incident to Arrest*

1. *Heafner's Vehicle*

Next, Heafner argues that the search of his vehicle cannot be justified as a search incident to arrest. (Doc. 42 at 6). To effectuate a legal search incident to an arrest, the arresting officers must demonstrate an actual and continuing threat to their safety or the need to preserve evidence related to the crime of the arrestee. (*Id.*). Heafner argues that neither of these justifications existed following his arrest. (*Id.*). The Government did not respond to this argument.

"Searches conducted outside the judicial process, without prior approval by [a] judge or magistrate, are *per se* unreasonable under the Fourth Amendment — subject to only a few specifically established and well-delineated exceptions." *Katz*

10

*v. United States*, 389 U.S. 347, 357 (1976). One of these exceptions is a search incident to lawful arrest. *Weeks v. United States*, 232 U.S. 383, 392 (1914). This exception derives from interests in officer safety and evidence preservation that is typically implicated in arrest situations. *United States v. Robinson*, 414 U.S. 218, 230-234 (1973). A search incident to lawful arrest authorizes police to search a vehicle when the arrestee is unsecured, and within reaching distance of the passenger compartment, or when "it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." *Arizona v. Gant*, 556 U.S. 332, 343, (2009) (quoting *Thornton v. United States*, 541 U.S. 615, 632 (2004) (Scalia, J., concurring)).

Here, the first justification cannot apply. When officers conducted the vehicle search, Heafner was being transported to St. Vincent Hospital. (Doc. 42-1 at 7). Heafner was neither unsecured nor within reaching distance of the vehicle. Further, it was not reasonable to believe evidence relevant to the crime of arrest would be found in the vehicle. Heafner was arrested based on his active warrant for misdemeanor stalking and his suspected involvement in a hit-and-run accident on March 14. (*Id.*). There is no indication that evidence relevant to either crime would be discovered in his vehicle. The vehicle involved in the hit-and-run accident was abandoned at the scene of the crime, and the evidence necessary to identify Heafner and charge him for the crime had already been discovered (a pill bottle with his

name, a firearm, and ammunition). (Doc. 48-5). Therefore, searching Heafner's vehicle cannot be justified as a search incident to arrest.

### 2. *Search of Heafner*

Heafner moves to suppress any evidence related to the search of his person after his arrest on March 15, 2023. Nothing in the briefings or attached exhibits demonstrates that Heafner was searched after his arrest or that any evidence was discovered on his person. This argument is therefore moot.

### C.   Exclusionary Rule

The fruit of the poisonous tree doctrine requires the Court to suppress all evidence obtained subsequent to a violation of the Fourth Amendment because such evidence is tainted by illegality and is inadmissible. *Morales*, 252 F.3d at 1073 (citing *Wong Sun*, 371 U.S. at 484–85.) Since Officers Malcom and Hewlett did not have the reasonable suspicion necessary to conduct a probationary search, they violated Heafner's Fourth Amendment rights. Therefore, all evidence obtained after the probationary search was initiated must be suppressed, including all evidence discovered via the search warrant.

## IV.   Conclusion

The Court finds the officers violated Heafner's Fourth Amendment rights when they performed a probationary search without sufficient reasonable suspicion.

Accordingly, any evidence seized from the vehicle during the probationary search and subsequently seized after the warrant was issued must be suppressed.

IT IS HEREBY ORDERED that Defendant Joshua David Heafner's Motion to Suppress (Doc. 40) is GRANTED.

DATED this 24th day of January, 2025

SUSAN P. WATTERS
United States District Judge